ZDANIS LAW FIRM, PLLC
By: Karen L. Zdanis, Esq. (KZ3651)
55 Old Turnpike Road, Suite 304
Nanuet, New York 10954
Tel (845) 356-0855

LAW OFFICES OF MICHAEL D. STEGER, PC
By: Michael D. Steger, Esq. (MS2009)
30 Ramland Road, Suite 201
Orangeburg, New York 10962
Tel (845) 359-4600

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------- x

MARVA HAWKINS,                                            17 Civ. _____

        Plaintiff,                           **COMPLAINT**

    against,                                 <u>JURY TRIAL DEMANDED</u>

NEW YORK STATE OFFICE OF MENTAL
HEALTH, ROCKLAND PSYCHIATRIC
CENTER and TENEATHIA WESOLOWSKI,

        Defendants.
----------------------------------------------------- x

      Plaintiff Marva Hawkins ("Plaintiff" or "Hawkins"), by and through her attorneys,

ZDANIS LAW FIRM, PLLC and LAW OFFICES OF MICHAEL D. STEGER, PC,

complaining of Defendants herein, alleges, upon knowledge as to herself and her own actions,

and upon information and belief as to all other matters:

<u>**PREFATORY STATEMENT**</u>

      1.    This is a civil action for damages and injunctive relief against Defendants New

York State Office of Mental Health ("NYS OMH") and the Rockland Psychiatric Center

("RPC") for employment discrimination and retaliation. OMH abruptly terminated Hawkins, who was qualified for and satisfactorily performing her job as an Investigator.

## NATURE OF CLAIMS

2.      Hawkins brings this racial discrimination case pursuant to 42 U.S.C. § 1981 ("Section 1981), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, the New York Human Rights Law, New York Executive Law Section 290 *et seq.* (the "Executive Law"), and Sections 191 and 198 of Article 6 of the New York Labor Law (the "Labor Law").

3.      Hawkins is a black woman of African American descent. As set forth below, NYS OMH and RPC subjected Hawkins to retaliation and disparate treatment after she filed a discrimination charge with the New York State Division of Human Rights ("NYS DHR") against her employer for discriminating against black and other minority employees in processing and investigating discrimination complaints.  Hawkins was also the victim of a hostile work environment that disfavored her and, upon information and belief, other black and minority employees at NYS OMH.  Finally, NYS OMH harassed and terminated Hawkins as reprisal for filing a discrimination charge against her supervisor. NYS OMH terminated Hawkins months after Hawkins filed an internal discrimination claim and an external discrimination charge with the EEOC and NYS DHR.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Hawkins' federal claims under 42 U.S.C. § 1981, 28 U.S.C. § 1331, and over her pendent state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is founded in the Southern District of New York pursuant to 28 U.S.C. §1391(a) and 28 U.S.C. §1391(b), and within this division because Hawkins worked for RPC and NYS OMH in Rockland County, New York.

2

6.      Hawkins has satisfied the jurisdictional prerequisites to this lawsuit.  Hawkins filed a formal administrative complaint with NYS DHR and the U.S. Equal Employment Opportunity Commission ("EEOC") in or about March of 2016.  The EEOC issued Hawkins a Right to Sue Letter on or about January 19, 2017 ("RTS").  A copy of the RTS letter is attached hereto as Exhibit A.

## PARTIES

7.      Hawkins resides in Pomona, New York, and is a resident of this District.

8.      Defendant NYS OMH maintains its headquarters in the State of New York.

9.      Defendant RPC is an affiliate of OMH.

10.      Defendant TeNeathia Wesolowski is an individual who supervised and retaliated against Hawkins. Upon information and belief, Wesolowski resides in Montgomery County, New York.

## FACTUAL ALLEGATIONS

11.      Hawkins is a black and African American woman who was employed by NYS OMH for approximately seven years, from 2009 until NYS OMH wrongfully terminated her in August of 2016.

12.      At the time NYS OMH hired her, Hawkins was a trained and skilled investigator. Prior to being hired with NYS OMH, she was employed by the City of New York Office of Revenue and Investigations as an Investigator and the Administration for Children's Services as an EEO Investigator/Trainer.

13.      As part of her training, Hawkins completed the Cornell University EEO Certificate Program, the NYC Department of Citywide Opportunity Certificate Program, and the

NYC Department of Citywide Administrative Services Certification program for EEO Investigations. She also took the NYPD's Investigative Techniques Training class.

14.      During her employment with NYS OMH, Hawkins was a top-performing Affirmative Action Administrator (a/k/a Equal Employment Opportunity Investigator), and her job performance was always beyond reproach. Hawkins was never reprimanded or disciplined until she filed internal and external discrimination charges against NYS OMH and her superior.

15.      During Hawkins' first year, her supervisors praised her for her knowledge and skill set, and Hawkins' mandatory probationary reports read "Ms. Hawkins is off to a very good start – she is very professional and positive in her work," "Exceeding all expectations (which were high)," and "What a find!"

16.      Hawkins continued to sharpen her skill set after her first year. In or about 2010, Hawkins was certified by the Governor's Office of Employee Relations to Conduct Sexual Harassment Prevention Trainings.

17.      Hawkins had received only positive annual job performance evaluations during her tenure at NYS OMH. Even during the year NYS OMH terminated her, Hawkins' performance evaluation was satisfactory and read "Marva [Hawkins] has stepped up to anything asked of her."

18.      While employed with NYS OMH, Hawkins' covered more NYS OMH facilities than any other EEO Investigator. In addition, Hawkins was required to handle investigations of other agencies more frequently than her co-workers. Hawkins' supervisors gave her these additional assignments in recognition of the quality of her work, knowledge of the field, and her superior investigative skills.

4

19.     One of her supervisors, Marisol Nunez Rodriguez, commended Hawkins on investigative skills and knowledge of federal state and local employment discrimination laws.

20.     Throughout Hawkins' employment, Nunez Rodriguez described Hawkins as the strongest investigator on the team.  Beginning in 2014, Nunez Rodriguez assigned Hawkins to cases that her peers struggled with.

21.     Beginning in 2012, in conjunction with the formation of the Workplace Developmental Unit, the Governor's Office of Employee Relations ("GOER") created a written 10-step process for investigation of discrimination and/or sexual harassment complaints.

22.     As of in or about February of 2013, all NYS OMH Affirmative Action Administrators ("Investigators") were required to utilize the 10-step investigation process developed by the GOER.

23.     In or about 2015, Elaine Bartley started working with the GOER as the Director and Counsel for Investigations.  At this time, NYS OMH required all EEO Investigative Reports to be submitted to Bartley's office for review and approval.

24.     Bartley is a Caucasian woman.

25.     In or about July of 2015, Wesolowski was hired as the Director of Office of Diversity Management for NYS OMH.

26.     After the GOER hired Bartley, Hawkins observed that Bartley discriminated against black and African American investigators by treating them differently and promoting discriminatory practices in the processing of EEO cases in Hawkins' unit.

27.     Hawkins observed that discrimination complaints were being processed unfairly and delayed based on the race of the complainants. Ironically, this discrimination came from the very organization that was created to protect minorities from discrimination.

28.     In some cases, the complaints of minorities were not accepted despite having merit, such that the statute of limitations that pertained to these complaints (through the employees' collective bargaining agreements) had expired.

29.     For example, Hawkins noticed that a substantiated discrimination case filed by a minority who submitted a failure to promote discrimination case was not being processed by Wesolowski, in violation of OMH policy.

30.     Hawkins also processed a complaint from an African American male about discrimination in promotional practices.   Hawkins determined that the allegations were substantiated, but the case has remained pending with Wesolowski since October 2015.

31.     When Hawkins and other EEO Investigators noticed that Bartley and NYS OMH was engaging in disparate practices that affected black and minority complainants, they voiced their concerns to their superiors.

32.     Subsequently, and in retaliation for voicing their complaints, the EEO Investigators who voiced their concerns about the discriminatory manner in which cases were being processed were treated unprofessionally and demeaned and harassed by NYS OMH, which also banned them from communicating with Bartley.

33.     Bartley and Wesolowski were condescending and rude to Hawkins and two other African American EEO Investigators, Leroy Gadsden and Michael McCaan, shortly after they voiced their concerns about unfair treatment of minority cases.

34.     Further, and in contrast to her treatment of non-minorities and EEOC Investigators who did not voice their concerns about internal discrimination, Bartley banned these African American Investigators from communicating with her directly.

35.     In retaliation, Bartley also falsely accused Hawkins of being insubordinate.

6

36.     Because of Bartley's actions, complaints from minorities were either not accepted for investigation or thorough investigations were not performed.  For example, when a Hispanic male employee filed a discrimination complaint after being denied a promotion, Bartley's staff told Hawkins not to conduct an investigation even though the 10-step investigation process developed by GOER mandated that all discrimination complaints must be investigated.

37.     In another case, after Hawkins, in her position as EEO Investigator, confirmed that the allegations of another minority in a national origin complaint were substantiated and after the case was approved by Nunez Rodriguez, Wesolowski improperly instructed Hawkins to change the charge determination.  Wesolowski also told Hawkins that the case should not have been accepted for investigation because the facts were unsubstantiated.  This case remained pending with Wesolowski's office since January 2016.

38.     On or about October 28, 2015, Hawkins filed a discrimination complaint with NYS DHR, alleging that Bartley and OMH had discriminated against Hawkins and other minority and other African-American EEO Investigators and that they had promoted discriminatory practices in the investigation processing of cases.  Hawkins' filing of the discrimination complaint was a protected activity.

39.     After she filed the NYS DHR complaint (the "Complaint"), NYS OMH, RPC and Wesolowski retaliated against Hawkins.

40.     Wesolowski retaliated against Hawkins by, amongst other things, singling out Hawkins and making it difficult for Hawkins to complete her work assignments efficiently by creating superfluous work for Hawkins.  For example, Wesolowski opened up and reviewed closed cases that Hawkins had previously worked on and made requests that were intended only to delay Hawkins and increase her workload.  Wesolowski also made repeated demands for

7

information and demands for unjustified and unnecessary reviews and edits of Hawkins' work. She also pulled and requested revisions for cases that had already been reviewed and approved by Hawkins' supervisor and the Executive Deputy Commissioner several months earlier. Wesolowski took these actions to create more work for Hawkins and make it appear that Hawkins was deficient in her duties. Nunez Rodriguez, Hawkins' supervisor, condoned this retaliation.

41.     In retaliation, Nunez Rodriguez informed Hawkins that Bartley instructed Hawkins not to communicate with other government agencies or other divisions of NYS OMH without first receiving the approval of Wesolowski and Nunez Rodriguez.

42.     In further retaliation for filing the Complaint, Hawkins' supervisors made baseless complaints about Hawkins' performance, attempted to tarnish her professional reputation, and went to unusual lengths to intensely scrutinize her work and excessively monitor her performance.

43.     For example, Wesolowski prohibited Hawkins from communicating directly with her supervisor, Nunez Rodriguez, without including Wesolowski on correspondence.  This directive was a deviation from NYS OMH's policy.

44.     In addition, Wesolowski also instructed other staff members at the Office of Diversity Management to forward all of Hawkins' email communications to Wesolowski.

45.     In further retaliation, NYS OMH sent Hawkins to conduct interviews in other distant sites outside of her assigned New York City area.  NYS OMH sent her to these areas despite having other EEO Investigators who were closer and available to conducti interviews. For example, in November 2015, Wesolowski ordered Hawkins to travel eight hours each way by bus to Syracuse, New York to conduct a thirty minute interview.  This lengthy travel

8

required an overnight stay, and was another deviation from the policies and regular practices of OMH, which was to permit local investigators to perform interviews when travel distance was a factor, especially so as not to cost taxpayers unnecessary travel costs.

46.     In or about November of 2015, Hawkins filed an internal retaliation complaint against Wesolowski via email, pursuant to NYS OMH's protocol.

47.     NYS OMH failed to process Hawkins' internal retaliation complaint pursuant to its own protocol.

48.     Instead, Wesolowski "intercepted" Hawkins' complaint, and Wesolowski completed and submitted a NYS OMH internal complaint form for Hawkins' claim against Wesolowski, alleging she completed it on Hawkins' behalf. Wesolowski submitted an inaccurate and incomplete complaint despite notifying Hawkins that she did not understand Hawkins' allegations, and without speaking to Hawkins first.  Neither Wesolowski nor NYS OMH provided a copy of the complaint form to Hawkins.

49.     Wesolowski assigned Hawkins' internal retaliation complaint to Wesolowski's friend and former subordinate, Elatisha Kirnon, who in turn made a superficial, if any, investigation of Hawkins' complaint.

50.     Hawkins reported Wesolowski's improper actions and deviation from the established GOER procedure to NYS OMH's administrators and Wesolowski's supervisors, and that no one had even interviewed her for the alleged investigation that Wesolowski's friend had allegedly performed.

51.     After Hawkins reported her concerns to her superiors and administrators, the Assistant General Counsel told Hawkins that an external agency was investigating her complaint.

52.     However, NYS OMH never designated any external agency to investigate Hawkins' internal complaint.

53.     Kirnon never contacted Hawkins during the investigatory process, either to interview her or ask for the names of witnesses.  NYS OMH's failure to contact Hawkins for an interview was contrary to the GOER's mandatory 10-step process for EEO investigations.

54.     On February 10, 2016, Kirnon sent a memorandum to Hawkins stating that she began an investigation into her retaliation complaint and that, pursuant to her draft investigation report, the internal Equal Employment Opportunity Office (DDEO) found Hawkins' allegations unsubstantiated and the case would be closed.

55.     Despite Hawkins' retaliation complaint, the retaliatory treatment and harassment that started after her Complaint actually increased.

56.     Immediately after Kirnon sent the memorandum indicating that NYS OMH was closing Hawkins' internal retaliation case, Wesolowski and Nunez Rodriguez notified Hawkins that she was required to attend a meeting in Albany, more than two hours away from Hawkins' workplace, the following day.

57.     Wesolowski subsequently scheduled the meeting for February 12, 2016 in Albany, on a flex-holiday. Wesolowski's pretextual purpose of the meeting was to discuss Hawkins' job performance. Wesolowski asked Nunez Rodriguez and an OMH Personnel Services representative who had no knowledge of Hawkins' performance to attend. Wesolowski failed to attend this meeting and her absence was unexplained.

58.     Prior to the meeting, Hawkins asked to have a representative from the Organization of NYS Management Confidential Employees present at the meeting, but Nunez Rodriguez informed her that was not necessary because the meeting was not of a disciplinary

nature. During the meeting, however, Hawkins was told that the meeting was a counseling session. OMH's Personnel Services representative, Daniel Ragone, told Hawkins that he was there to support Nunez Rodriguez and provided Hawkins with a spurious performance improvement plan (PIP).  NYS OMH placed Hawkins on this three month PIP even though she had not received any verbal warning or counseling prior to the meeting and even though all of Hawkins' performance evaluations had been satisfactory.  This pretextual PIP deviated from NYS OMH policy.

59.    Not only was Ragone present at the meeting, but he created the PIP and facilitated the meeting. The presence of a Personnel Services representative at this meeting and his creation of the PIP was also a deviation from OMH policy.

60.    There was no legitimate purpose for the PIP. The stated purpose of the PIP was vague and non-specific.  For example it stated its purpose was to "provide direction to guide" Hawkins through "identified areas for job performance improvement" and to "evaluate her success," however this was pretext.  Given Hawkins' actual job performance, the PIP was clearly intended only to intimidate and harass Hawkins and to wrongfully discredit her professional reputation.

61.    When Hawkins requested to provide documentation to demonstrate the falsity of the information contained in the PIP, Ragone refused to allow her to submit such documentation and told her that NYS OMH was going to go ahead as planned.

62.    The PIP included weekly progress reviews with Hawkins' supervisor for a period of three months on all aspects of Hawkins' work, and Nunez Rodriguez submitted these weekly progress reports to Wesolowski.  The progress reviews were not actually intended to guide or

assist Hawkins. Instead, when Hawkins asked for assistance from her supervisors, they refused to assist her, and instead reprimanded her for seeking help.

63.     Thus, the PIP was designed to frustrate Hawkins and create a way for OMH and Wesolowski to make it appear as if Hawkins was not doing her job satisfactorily.

64.     The PIP created the opportunity for Wesolowski and Nunez Rodriguez to excessively monitor her and compelled Hawkins to submit unnecessary and additional documentation that only added to Hawkins' already-increased workload. The PIP offered no assistance to help with her increased workload.

65.     The mandates of the PIP were unrelated to Hawkins' job performance, which had been satisfactory.   The PIP discriminatorily unjustified reprimands for Hawkins lack of timeliness, and imposed an arbitrary one day turnaround on requests, which was a deadline intended to set Hawkins up for failure.   The one day turnaround was never imposed on another employee in Hawkins' position. Further, no one ever reprimanded Hawkins or informed her of any of these alleged performance issues prior to the PIP.

66.     The PIP also contained discriminatory mandates. For example, Hawkins was mandated to complete investigations in 30 days, when her peers were not reprimanded for not completing investigations in 30 days. The timeline in which Hawkins submitted her cases was equal to or surpassed her peers' performance. In fact, Hawkins' ability to complete case investigations more expeditiously than her peers led to her peers' cases being reassigned or initially assigned to Hawkins to complete the case investigation.

67.     The PIP and Wesolowski set up roadblocks to Hawkins' ability to work efficiently.   They required Hawkins to get approvals which did and were intended to cause delay to Hawkins in performing tasks in a timely manner. The PIP falsely claimed that Hawkins

provided late reports when the reason for the delay in the reports was attributed to Wesolowski and the procedures of NYS OMH, including instructions from Hawkins' supervisors to prioritize other complaints.

68.     The PIP also singled out and discriminated against Hawkins by requiring her to calendar all of her time, where the standard practice was for EEO Investigators was only to identify time they were in or out of the office or away on vacation. For example, the PIP required Hawkins to identify when she was working on writing reports. No other Investigators were required to account for all of their time on the computer calendaring system.

69.     Following the February 12, 2016 meeting, NYS OMH and Wesolowski continued to retaliate and discriminate against Hawkins by excessively monitoring her work and reprimanding her unjustifiably, sometimes in front of others.

70.     After the meeting, NYS OMH further discriminated against Hawkins on at least two occasions when she asked for an extension that should have been approved under regular practice and under circumstances that Hawkins could not control. Bartley wrongfully denied Hawkins the extension on one occasion, and on the other occasion Nunez Rodriguez communicated the denial.

71.     For another investigation that Hawkins had begun, her supervisors further retaliated against her by instructing Hawkins to do more work and complete an investigation. The purpose of this instruction was to create an excess amount of work for Hawkins and was ordered against the normal protocol, given the status of the pending case with the EEOC, which indicated no action was needed.

72.     Hawkins was further retaliated against when she submitted a notice of complaint to the Workforce Development Unit (a/k/a GOER) without going to her supervisors first to

"review" the case. This reprimand was unjustified because it preceded any instruction to do so from her supervisors, and contradicted GOER's normal case investigation procedure. There was no valid reason for Hawkins' supervisors to review the information contained in the basic form Investigators filled out to initiate a case and no other Investigator had been required to submit their notices of complaint for review before submitting them.

73.    Another African American EEO Investigator, Leroy Gadsden, complained about Wesolowski's and NYS OMH's discriminatory practices against African American and other minority complainants. He also filed a discrimination complaint with the NYS DHR and later resigned from NYS OMH because of the retaliation he experienced after voicing his complaint.

74.    In or about February of 2016, after she received Kirnon's memo, Hawkins called the NYS DHR to follow up on the Complaint (the NYS DHR charge), and was informed that it was dismissed for lack of jurisdiction because GOER was not Hawkins' employer. At that time Hawkins was told to file a new complaint and to specifically name NYS OMH and Wesolowski.

75.    In March 2016 Hawkins filed a discrimination and retaliation complaint with the EEOC and NYS DHR against NYS OMH and Wesolowski.

76.    On or about March 23, 2016, during an annual training session for the Affirmative Action Administrators, Bartley used Hawkins' personal discrimination cases against Bartley, Wesolowski and NYS OMH as case examples to harass, intimidate and embarrass Hawkins and damage her professional reputation.  Though Bartley did not expressly use Hawkins' name, she provided enough facts so that the other EEO Investigators knew that Bartley was referring to Hawkins.

77.    Hawkins notified NYS OMH's Counsel and administrator of Bartley's harassing actions, but they took no disciplinary action against Bartley.

78.     On April 1, 2016, nearly six months after filing her internal retaliation charge against Wesolowski, and nearly two months after escalating the matter to her superiors and receiving the memorandum from Kirnon stating that her internal retaliation complaint was closed, Hawkins received an email from Karim Adeen-Hasan, who worked for the Office of the State Comptroller. Adeen-Hasan informed Hawkins to that he had been assigned to investigate her retaliation complaint against Wesolowski.

79.     Adeen-Hassan also told Hawkins that he had always been the Investigator for the case from the beginning, and he did not know how Kirnon became involved in the case.  He went on to tell Hawkins that he was unaware Kirnon had determined that Hawkins' allegations were unsubstantiated.

80.     To this day, NYS OMH has not conducted an external investigation because the people NYS OMH contacted to conduct the investigation ultimately reported to Bartley; therefore, NYS OMH made no effort to conduct an external, unbiased investigation.

81.     Hawkins completed the three month PIP on May 12, 2016.

82.     On March 31, 2016, while the PIP was pending, Janet Monroe, the Executive Director provided Hawkins with her annual performance evaluation and rated Hawkins' performance as "satisfactory" in all areas.  Monroe also commented that "Marva has stepped up to anything asked of her…"

83.     Hawkins continued to work for NYS OMH until July 28, 2016, when NYS OMH, by and through Wesolowski abruptly fired Hawkins without providing her a reason.

84.     NYS OMH fired Hawkins despite the fact that she had completed the PIP satisfactorily and she had been performing her job satisfactorily.

85.     NYS OMH fired Hawkins without justification, and it did so in retaliation for her engaging in protected activities of reporting discrimination and retaliation.

86.     Neither NYS OMH nor RPC provided Hawkins with any explanation for why she was terminated.

87.     Other employees at NYS OMH were falsely told that Hawkins had retired.


**FIRST CAUSE OF ACTION**

**Retaliation under New York Labor Law and Civil Service Law**

88.     Hawkins realleges and incorporates herein by this reference each and every allegation contained in the above paragraphs.

89.     The harassment and termination that Defendants NYS OMH and RPC (collectively the "Defendant Entities") inflicted on Hawkins constitute unlawful adverse employment actions that were made in retaliation for Hawkins' internal and external reporting of improper government activity, namely discrimination in the processing of internal equal employment opportunity discrimination complaints.

90.     The Defendant Entities' actions violate the New York Civil Service Law § 75-b (Retaliatory Action by Public Employers), and New York Labor Law § 740 (Retaliatory Personnel Actions by Employers).

91.     Hawkins is entitled to damages from the Defendant Entities including reinstatement of employment, reinstatement of fringe benefits (including health insurance benefits and pension benefits) compensation for lost wages and benefits and other renumeration, prejudgment interest and costs, including disbursements and attorneys' fees for the violations of

the Civil Service Law and Labor Law pursuant to Civil Service Law § 75(b) and New York Labor Law § 740(5).

## SECOND CAUSE OF ACTION

### Retaliation under the New York Human Rights Law

92.     Hawkins realleges and incorporates herein by this reference each and every allegation contained in the above paragraphs.

93.     The Defendants' conduct in improperly reprimanding Hawkins and retaliating against her by continuing to harass her after she complained to NYS OMH's Human Resources and/or Diversity Department(s), of the unlawful treatment and then ultimately terminating Hawkins' employment constitutes unlawful retaliation against Hawkins in violation of the New York Executive Law, §§290 *et seq.*, and specifically §296.

94.     The conduct of Defendants in terminating Hawkins' employment and retaliating against her after she engaged in the protected activities of filing an internal grievance of discrimination and after filing a complaint with NYS DHR and the EEOC constitutes unlawful retaliation against Hawkins in violation of the New York Executive Law, §§290 *et seq.*, and specifically §296.

95.     By reason of the Defendants' discriminatory and retaliatory actions against Hawkins including firing her because she reported the Defendants' own discrimination both to NYS OMH and by filing a discrimination charge with NYS DHR and the EEOC, NYS OMH and RFP unlawfully terminated Hawkins, causing her a loss of earnings and benefits, future earnings and benefits, great pain, and mental anguish. Hawkins is thus entitled to injunctive relief of reinstatement to her former position of EEO Investigator and benefits (including pension

benefits) and an award of all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under the Executive Law.

## THIRD CAUSE OF ACTION

### Racial Discrimination in Violation of 42 U.S.C. § 1981

96.     Hawkins realleges and incorporates herein by this reference each and every allegation contained in the above paragraphs.

97.     From 2009 until and through July 28, 2016, Hawkins was an employee of NYS OMH and RPC.

98.     During this time period, NYS OMH and RPC engaged in the above discriminatory and retaliatory pattern and practice of harassing and discriminating Hawkins because of her race and her complaint against NYS OMH regarding racial discrimination, including, but not limited to, giving her more assignments, talking down to her in a condescending manner, intimidating her, issuing her an unjustified PIP, instructing her not to process EEO complaints from African Americans and other minorities, treating her poorly compared to her white and non-minority coworkers, and unjustifiably terminating her.

99.     As a direct and proximate result of said acts, Hawkins has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, expense, embarrassment and damage to her reputation.

100.    The Defendant Entities' actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for Hawkins' rights.  Therefore, Hawkins is entitled to an award of back-pay and lost wages and benefits,

injunctive relief, including reinstatement to the position she was discriminatorily discharged from, in addition to an award of punitive or exemplary damages in an amount sufficient to punish the Defendant Entities and deter them from similar conduct in the future.

101.    Hawkins is also entitled to recover her reasonable attorneys' fees from the Defendant Entities pursuant to 42 U.S.C. § 1988.


## FOURTH CAUSE OF ACTION

### Hostile Work Environment and Unlawful Retaliation under Title VII

102.    Hawkins realleges and incorporates herein by this reference each and every allegation contained in the above paragraphs.

103.    As described above, the Defendant Entities have taken adverse employment actions against Hawkins, subjected her to a hostile work environment and/or maintained an atmosphere of adverse actions, due to her race, national origin and/or opposition to discriminatory practices, in violation of Title VII of the Civil Rights Act of 1964.

104.    By reason of the Defendant Entities' discriminatory actions against Hawkins on account of her race, national origin and/or ethnicity, and protected actions, Hawkins has suffered a loss of earnings and benefits, future earnings and benefits, great pain, and mental anguish. Hawkins is thus entitled to an award of back pay and front pay, and all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under law.

105.    Because of the Defendant Entities' unlawful retaliation, Hawkins is entitled to an award of punitive damages and to recover her costs and attorneys' fees pursuant to 42 U.S.C. §2000e.

**FIFTH CAUSE OF ACTION**

**Racial Discrimination Under the New York Executive Law**

106.    Hawkins realleges and incorporates herein by this reference each and every allegation contained in the above paragraphs herein.

107.    By the acts and practices described above, including but not limited to harassing and discriminating against Hawkins compared to her white and non-minority co-workers, and retaliating against her for engaging in protected activity, Wesolowski and the Defendant Entities discriminated against Hawkins in the terms and conditions of her employment on the basis of her race in violation of the Executive Law.

108.    The Defendant Entities are liable for the foregoing conduct as Hawkins' "employer" pursuant to the Executive Law.

109.    Wesolowski is liable for the foregoing conduct as Hawkins' "supervisor" pursuant to the Executive Law.

110.    By reason of the Defendants' discriminatory actions against Hawkins on the basis of her race and national origin or ethnicity, Hawkins has suffered a loss of earnings and benefits, future earnings and benefits, great pain, and mental anguish.   Hawkins is thus entitled to reinstatement of her position and benefits (including her pension benefits) and all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under the Executive Law.

**PRAYER FOR RELIEF**

WHEREFORE, Hawkins respectfully requests that this Court enter an award:

     a.  Declaring the acts and practices complained of herein are in violation of New York Civil Service Law § 75, New York Labor Law § 740, 42 U.S.C. § 1981,

the Executive Law, Title VII of the Civil Rights Act of 1964 and New York
Labor Law.

b.  Directing the Defendants to take such affirmative action as is necessary to
ensure that the effects of these unlawful employment practices are eliminated
and do not continue to affect Hawkins' employment opportunities;

c.  Directing the Defendants to place Hawkins in the position she would be in but
for the discriminatory and retaliatory treatment of her, and to make her whole
for all earnings she would have received but for Defendants' discriminatory
and retaliatory treatment, including but not limited to, wages and other lost
benefits;

d.  Directing that Hawkins be reinstated to her position as EEO Investigator;

e.  For an award of compensatory damages against Defendants, according to
proof;

f.  Awarding Hawkins punitive damages against Defendants as provided by  42
U.S.C. § 1981;

g.  Awarding Hawkins an additional amount from Defendants to compensate
Hawkins for the emotional distress Defendants' unlawful conduct has caused
Hawkins;

h.  Awarding Hawkins pre-judgment and post-judgment interest as is allowed by
law;

i.  Awarding Hawkins her reasonable attorneys' fees and costs; and

j.  Granting such other and further relief as the Court deems necessary and
proper.

## DEMAND FOR TRIAL BY JURY

Hawkins hereby demands, pursuant to the Seventh Amendment of the Constitution and

Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.


Dated: January 27, 2017
      Nanuet, New York

              By:       _____/s/_____

                     Karen L. Zdanis (KZ3651)
                     ZDANIS LAW FIRM, PLLC
                     Old Turnpike Road, Suite 304
                     Nanuet, New York 10954
                     (854) 356-0855


                     Michael D. Steger, Esq. (MS2009)
                     STEGER KRANE LLP
                     30 Ramland Road, Suite 201
                     Orangeburg, NY  10962
                     (845) 359-4600

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Marva Hawkins**
**PO Box 211**
**Tomkins Cove, NY 10980**

From:  **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2016-01995 | Holly M. Woodyard, **State & Local Program Manager** | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (*briefly state*)  **Charging Party Wishes to Pursue matter in Federal District Court .**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

**Kevin J. Berry,**
**District Director**

JAN 19, 2017
*(Date Mailed)*

Enclosures(s)

cc:  Karen L. Zdanis, Esq.

**Attn: Marisol Nunez Rodriguez**
**NEW YORK STATE, OFFICE OF MENTAL HEALTH**
**Director, Office of Diversity Management**
**44 Holland Avenue**
**Albany, NY 12229**

**Alan H. Sunukjian, Esq. Assistant Counsel**
**New York State , Office of Mental Health**
**Office of Counsel**
**44 Holland Avenue**
**Albany, NY 12229**

Exhibit A